STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

08-535


AMY BROSSETT, ET AL.

VERSUS

MELODY HOWARD, ET AL.


**********
APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 193,801
HONORABLE F. RAE D. SWENT, DISTRICT JUDGE
**********

CHRIS J. ROY, SR.[1]
JUDGE

**********

Court composed of John D. Saunders, James T. Genovese, and Chris J. Roy, Judges.


EXCEPTION OVERRULED; JUDGMENT AFFIRMED, AS AMENDED.


Joseph J. Bailey
Provosty, Sadler & deLaunay
P. O. Drawer 1791
Alexandria, LA 71309-1791
(318) 445-3631
Counsel for Plaintiffs/Appellees:
    Amy Brossett, et al.

---

[1]Judge Chris J. Roy, Sr. appointed judge pro tempore of the Court of Appeal, Third Circuit.

**Barry Ray Laiche**
**Provosty, Sadler**
**237 S. Washington Street**
**Marksville, LA 71351**
**(318) 253-4435**
**Counsel for Plaintiffs/Appellees:**
**Amy Brossett, et al**

**Ian Alexander Macdonald**
**Longman Russo**
**P. O. Drawer 3408**
**Lafayette, LA 70502-3408**
**(337) 262-9000**
**Counsel for Defendants/Appellants:**
**Progressive Security Ins. Co.**
**Melody Howard**

**ROY, Judge (pro tempore)**.

This is an appeal brought by defendants, Melody Howard (Howard) and her insurer, Progressive Insurance Company (Progressive), of the judgment rendered after the jury trial of a personal injury and wrongful death action. The plaintiffs, Amy Brossett and her daughter, Emily Brossett Porche (Emily), were awarded general and specific damages, including damages for the death of Brossett's husband and Emily's father, Craig Brossett. The defendants argue that the damage awards are unsupported by the evidence and should be reversed and that Emily's claims should be dismissed because they were prescribed and the citation to the amended petition asserting her claims was never properly served. The defendants have also filed with this court an Exception of No Right of Action, asserting that Amy Brossett lost her standing to seek damages through this action when she filed for bankruptcy while the lawsuit was pending. Amy Brossett has answered the appeal, asking this court to reverse the jury's denial of exemplary damages.

For the following reasons, the Exception of No Right of Action is overruled and the judgment of the trial court is affirmed, as amended.

## ISSUES

1. Should the Exception of No Right of Action, raised for the first time on appeal, be sustained due to the failure of Amy Brossett's bankruptcy trustee to be substituted as the plaintiff in this action?

2. Was Emily's claim for wrongful death damages prescribed when it was filed years after the commencement of the action?

3. Should Emily's damage awards have been excluded from the judgment due to plaintiffs' failure to serve the defendants with a citation of the suit?

1

4.  Did the jury abuse its discretion in awarding to Emily $500,000.00 in damages for the wrongful death of her father despite the fact that she was an infant when he died?

5.  Did the jury abuse its discretion in awarding future medical expenses in the amount of $50,000.00 to Amy Brossett, when the only expert testimony offered regarding the value of future medical expenses was $36,052.00?

6.  Were the awards to Amy Brossett of $750,000.00 for her pain and suffering and $75,000.00 for her loss of enjoyment of life abusively high considering the evidence presented?

7.  Did the jury abuse its discretion in awarding to Amy Brossett a $40,000.00 disability award, considering the evidence presented of her status of recovery from her injuries?

8.  Did the jury abuse its discretion in awarding Amy Brossett and her daughter, a total award of $500,000.00 for loss of future economic support, when the expert testimony presented at trial quantified the loss as $394,531.00?

9.  Did the jury abuse its discretion in failing to award exemplary damages to the plaintiffs when it was stipulated that Howard was intoxicated and at fault in causing the accident and resulting injuries?

## FACTUAL BACKGROUND

On March 7, 1998, shortly after midnight on Louisiana Highway 107, Melody Howard drove her 1992 Toyota 4-Runner into the Brossetts' 1995 Pontiac Grand Am, causing the death of Craig Brossett and causing serious injuries to Amy Brossett. It is undisputed that Howard was legally intoxicated at the time of the crash. Since approximately 4:00 p.m. that day, she had been celebrating her fortieth birthday with friends and co-workers, beginning with drinks and appetizers at a local restaurant.

2

The evening ended near midnight at a local hotel's bar. Although Howard has no memory of leaving the hotel's bar, it is undisputed that she was driven by two of her co-workers to her car, which was parked at another location and was left to drive herself home.

Howard was alone in her vehicle and attempting to drive herself home when the accident happened. She had fallen asleep at the wheel and was seen by following drivers, swerving multiple times from her southbound lane of travel across the northbound lanes and back. Immediately prior to the accident occurring, she had crossed the entire highway and was driving on the shoulder of the northbound side of the highway, facing oncoming, northbound traffic.

The Brossetts, who were traveling north on Highway 107, were returning home after having had dinner with friends; they had not consumed any alcohol that evening. Amy Brossett was driving, as her husband, Craig, lay reclined and sleeping in the front passenger seat. As Howard's vehicle and the Brossetts' vehicle approached, Howard woke up and jerked her steering wheel into the oncoming traffic, striking the Brossetts' vehicle. She denied seeing the Brossetts' vehicle until immediately before the impact.

Craig Brossett died in the vehicle without regaining consciousness. Amy Brossett suffered multiple injuries, the most serious of which were the fractures to her right hip, a broken femur, an open fracture of the kneecap, and multiple fractures to, and a dislocation of, her right foot. She was pinned in the vehicle under the wreckage for well over an hour. While efforts were being made to extricate Amy Brossett from the vehicle, she remained conscious and suffered excruciating pain.

Results from toxicology tests performed on the night of the accident resulted

3

in Howard being arrested and charged with Vehicular Homicide for Craig Brossett's death and also First Degree Vehicular Negligent Injury for the serious injuries caused to Amy Brossett. Howard subsequently submitted a "blind plea" to the court in that proceeding. That is, she voluntarily pled guilty to the charges with no pre-agreement as to sentencing.

Craig was twenty-four years old when he died. Amy was twenty-three. The Brossetts had been married since November of 1996— approximately sixteen months at the time of the accident—and had a nine-month old daughter, Emily, who was being babysat by her grandmother that evening.

Amy Brossett filed a Petition on behalf of herself and "the Estate of Craig Brossett" on October 23, 1998, originally seeking multiple general and specific damages for her personal injuries, as well as wrongful death and survival damages[2] due to her husband's death. On January 19, 2007, Amy Brossett filed her Fifth Supplemental and Amending Petition, adding their daughter, Emily Brossett Porche,[3] as a plaintiff in the action. The parties jointly stipulated to the court that the claims of Emily were not prescribed and would related back to the date of the filing of Amy Brossett's original petition. The trial court allowed the amendment and filing of the petition.

Also prior to the trial of this matter, Howard filed a stipulation accepting 100 percent of the fault and sole responsibility for the accident. She further stipulated that Craig Brossett died from the injuries he sustained in the accident. Accordingly, this case was tried before a jury, on the issue of damages only, from October 23, 2007

---

[2]The claim for survival damages was later voluntarily dismissed.

[3]Amy Brossett married William Porche in April of 2001.

through October 25, 2007.  The jury's awards, which were subsequently rendered by the trial court in its Final Judgment, were as follows:

For the injuries to Amy Brossett

| | |
|---|---|
| Past medical expenses | $ 81,869.14<br>(credit=<br>$30,960.00)[4] |
| Future medical expenses | $ 50,000.00 |
| Past lost wages | $ 6,500.00 |
| Physical pain & suffering &<br>mental anguish | $750,000.00 |
| Loss of enjoyment of life | $ 75,000.00 |
| Disability | $ 40,000.00 |
| Loss of consortium to Emily<br>(For her mother's injuries) | $ 5,000.00 |

For the wrongful death of Craig Brossett

| | |
|---|---|
| For loss of past economic support<br>for Amy and Emily | $173,000.00 |
| For loss of future economic<br>support for Amy and Emily | $500,000.00 |
| Loss of love, affection,<br>companionship, grief and<br>anguish to Amy | $250,000.00 |
| Loss of love, affection,<br>companionship, grief, and<br>anguish to Emily | $500,000.00 |

Do you find that an award of exemplary damages should be made in this case?

Yes _____                                          No  XX

---

[4]This amount constituted the sum, at trial, of the monthly restitution payments that Melody Howard had been ordered by the criminal court to pay to Amy Brossett.

Progressive and Howard have appealed the judgment, asserting that the jury abused its discretion in quantifying the amount of many of the awards rendered. They assert that $50,000.00 for future medical expenses is unsupported by the evidence produced at trial, which only established that $36,052.00 in future medical expenses might be warranted. They argue that the general damage awards to Amy Brossett of $750,000.00 for pain and suffering and $75,000.00 for loss of enjoyment of life are abusively high. The defendants argue that these awards are a consequence of the trial court disallowing the presentation to the jury of Amy Brossett's statement in a letter to Howard in 2005 that she was "happy." Moreover, the defendants contend that the awards are not justified because Amy Brossett failed to introduce any evidence of her loss of the ability to resume many of the activities and/or the recreational lifestyle she enjoyed prior to the accident. Additionally, the defendants contend that there is a lack of evidence of Amy Brossett suffering from any physical or mental impairment to support granting her a disability award of $40,000.00. Finally, they appeal the joint award to Amy Brossett and Emily of $500,000.00 for their loss of future economic support due to Craig's death, arguing that the only evidence presented at trial of this loss totaled $394,531.00.

Regarding Emily's awards, it was argued that the $500,000.00 general damage award for the loss of her father's love, affection, companionship, and for her grief and anguish was abusively high due to the fact that she was nine months old at the time of his death, and she lacked a requisite awareness of the loss suffered. Further, the defendants contend that Emily's claims, which were added nine years after the accident, were prescribed and should be dismissed. The defendants also argue that Emily's claims should be dismissed because they did not receive proper service of the

6

citation of the amended petition that added her claims to the action. The defendants have also filed a peremptory Exception of No Right of Action with this court, seeking the dismissal of the entire action. The exception challenges Ms. Brossett's capacity to pursue this lawsuit after she filed a petition to be declared bankrupt in federal court in 2004, years after this suit was filed.

Amy Brossett has answered the appeal, asserting that the jury abused its discretion in failing to award exemplary damages pursuant to La.Civ.Code art. 2315.4, which authorizes exemplary damages for injuries caused by an intoxicated defendant.

## LAW AND DISCUSSION

### *Exception of No Right of Action*

The defendants' peremptory exception alleges that Ms. Brossett instituted a Chapter 7 bankruptcy proceeding while her action was pending. Once the action was filed, the defendants contend that she no longer possessed the right to pursue the pending claims for damages. Rather, according to the defendants, from the time the petition for bankruptcy was filed, the bankruptcy trustee became exclusively vested with the right to pursue those claims. Therefore, the defendants assert that because the trustee was never substituted as the plaintiff in these proceedings, the suit should be dismissed.

Amy Brossett argues that the exception of no right of action should be overruled because she was authorized by the bankruptcy court to continue pursuit of her claims in the pending litigation. She alternatively argues that the exception should be denied because proof of the ground of the exception does not appear in the

7

record, as is required by La.Code Civ.P. art. 2163.[5]  For the following reasons, the exception is overruled.

The peremptory exception of no right of action questions a plaintiff's right to pursue the remedy being sought:

> An exception of no right of action is a threshold procedural device used to terminate a suit brought by a person who has no legally recognized right to enforce the right asserted.  Unless otherwise provided by law, an action can only be brought by a person having a real and actual interest in the matter asserted.  LSA-C.C.P. art. 681.

*Joseph v. Hosp. Serv. Dist. No. 2 of Parish of St. Mary*, 05-2364, p. 5 (La. 10/15/06), 939 So.2d 1206, 1210.

Louisiana Code of Civil Procedure article 2163 states that the exception of no right of action can be considered for the first time on appeal, but only if it is filed prior to the case being submitted for a decision, and "proof of the ground of the exception appears of record."  Both parties agree that the only reference in the record to Amy Brossett's bankruptcy proceedings is contained in the text of the trial court pleading styled, Second Request for Trial Date, that was filed by her attorney in 2006.  Therein her attorney stated that "[t]he undersigned has obtained permission from the bankruptcy court to proceed in this matter."  Our review of the record confirms that this statement by Amy Brossett's counsel is the only reference in the record to her bankruptcy action, and it is accurate that the bankruptcy trustee was never substituted as a plaintiff in the personal injury and wrongful death action that is at issue.

---

[5]Code of Civil Procedure article 2163 states, in relevant part:

**Art. 2163.  Peremptory exception filed in appellate court; remand if prescription pleaded**

The appellate court may consider the peremptory exception filed for the first time in that court, if pleaded prior to a submission of the case for a decision, and if proof of the ground of the exception appears of record.

8

We recognize that, generally, only a trustee has a right to pursue a debtor's cause of action that existed at or prior to commencement of a bankruptcy proceeding:

> 11 U.S.C.A. § 323 makes the trustee the representative of the bankrupt's estate, and grants him the capacity to sue and be sued. 11 U.S.C.A. § 541 provides that the commencement of a bankruptcy case creates an estate, which includes all legal and equitable interests of the bankrupt in property "as of the commencement of the case." 11 U.S.C.A. § 704 obligates the trustee to collect and administer the bankrupt's estate. Thus, all legal and equitable interests of the bankrupt in property vests in the trustee from the time the bankruptcy is filed. Thereafter, only the trustee can act to recover the assets of the bankrupt. *It is the trustee, not the bankrupt, who has the legal capacity to sue upon a cause of action for damages arising prior to the filing of the petition in bankruptcy.*

*Jones v. Chrysler Credit Corp.*, 417 So.2d 425, 426 (La.App. 1 Cir.), *writ denied*, 420 So.2d 456 (La.1982), *cert. denied*, 459 U.S. 1114, 103 S.Ct. 747 (1983) (emphasis added). However, we also recognize that a trustee has the authority to allow the bankruptcy plaintiff to proceed, via his or her own counsel, in any such pending litigation. *Scarborough v. Duke*, 532 So.2d 361 (La.App. 3 Cir. 1988); *Johnson v. Best Mfg. Co., Inc.*, 263 So.2d 436 (La.App. 1 Cir. 1972).

We find that under the circumstances of this particular case, in which there has been a final judgment rendered after the conclusion of a multi-day jury trial, following almost ten years of litigation, equity and judicial economy entitles us to consider Amy Brossett's attorney's statement that was made in the Motion for New Trial, since these attestations clearly have evidentiary value pertinent to the determination of this peremptory exception. *See Ott v. Richard*, 556 So.2d 147 (La.App. 5 Cir. 1990) (finding that judicial expediency and economy supported the court's consideration of an attorney's admission made during argument to the trial court of the fact of his client's filing a bankruptcy petition in federal court, although

no tangible evidence as to the details of the bankruptcy was filed in evidence).

Specifically, we find that Amy Brossett's attorney's statement infers that she was involved in personal bankruptcy proceedings while the personal injury and wrongful death action was pending. Moreover, because the attorney referenced his receipt of approval from the bankruptcy court to proceed, it further infers an acquiescence of the fact that Amy Brossett no longer possessed the standing to pursue the tort action as a consequence of her initiating the bankruptcy action. We find that this statement, consequently, negates Amy Brossett's claim, made in opposition to the exception, that there is nothing contained in the record to support the basis of the exception and that it should, therefore, not be considered by this court. *See* La.Code Civ. P. art. 2163.

However, the statement also brings to a quick close, our review of the exception. Amy Brossett's attorney's attestation to the trial court that he received the bankruptcy court's approval to proceed to trial, notwithstanding the pending bankruptcy, was accepted as true by the trial court and was not challenged prior to trial by opposing counsel. Considering this, and in efforts to promote judicial expediency and economy under the particular facts of this case, the exception of no right of action is overruled.

### *Prescription of Emily Brossett Porche's Claims and Service of Process*

The defendants contend that the trial court erred by allowing the addition of Emily Brossett Porche's claim for wrongful death damages nine years after the suit was initially filed by her mother. The suit was filed in October 1998, and at the time, Emily was not named as a plaintiff in the action. It is argued that Emily's claims were prescribed and could not relate back to the date of the timely filing of Amy Brossett's

10

first petition because they constituted an unexpected assertion of substantial claims that Amy Brossett knew or should have known about when she filed the first petition. The defendants argue that it is inexplicable that although multiple amendments were made to the petition over the years, it was not until 2007 that Amy Brossett moved for leave of court to add Emily as a plaintiff in a Fifth Supplemental and Amending Petition. They also argue in this appeal that they were never properly served with the citation to the Fifth Supplemental and Amending Petition after the court approved its filing, and for this reason as well, Emily's claims should be dismissed.

The record reflects that during the hearing held on April 16, 2007, on Amy Brossett's Motion for Leave to File Fifth Supplemental and Amending Petition, counsel for defendants and Amy Brossett entered a joint stipulation in regard to the filing of the amended petition. The court's minutes recite the joint stipulation as follows: " the Fifth Supplemental and Amending Petition will be allowed; the claim of Emily Brossett is not prescribed . . . ." A judgment was thereafter rendered in accordance with the stipulation and the amendment was allowed by the trial court. Because of this stipulation, we find that the defendants are precluded from now asserting that the claims are prescribed, for the following reasons:

> A judicial confession is a declaration made by a party in a judicial proceeding. That confession constitutes full proof against the party who made it. A stipulation has the effect of a judicial admission or confession, which binds all parties and the court. Stipulations between the parties in a specific case are binding on the trial court when not in derogation of law. Such agreements are the law of the case. It is well-settled that a stipulation amounts to full proof against those who made it. It has the effect of withdrawing a fact from issue and disposing wholly with the need for proof of that fact.

*Parish of St. Charles v. R.H. Creager, Inc.*, 07-676 (La.App. 5 Cir. 2/6/08), pp. 9-10,

11

975 So.2d 742, 747-48, *writ denied*, 08-777 (La. 6/6/08), 983 So.2d 918 (footnotes omitted). Accordingly, we find that this exception to the filing of Emily's claims on the basis of prescription is meritless.

Additionally, we find no merit to the defendants' assertion that Emily's claims, as set forth in the Fifth Supplemental and Amending Petition, should be dismissed because of their failure to receive service of a citation for the amended suit. The record reflects that immediately prior to the commencement of trial, counsel for the defendants orally entered a general denial to all of the claims asserted in the final amended petition and stated to the court that all of the issues were joined. There was no exception regarding insufficient service of citation filed before the defendants' general denial was entered into the record. Louisiana Code of Civil Procedure articles 925 and 928 require that the declinatory exception of insufficiency of citation be pled prior to or in the answer. This was not done. Accordingly, we find that these exceptions were waived and may not now be raised before this court on appeal.

### *Future Medical Expenses*

Amy Brossett was awarded future medical expenses in the amount of $50,000.00 by the jury. The defendants argue, first, that this value is too high since the only evidence of the value of any future medical expenses was in the amount of $36,052.00, which represented her expert economist's calculation of the present value of the only future medical treatment that might be needed—hip replacement surgery. Next they argue that no evidence was presented that definitively established that Amy Brossett would need this procedure in the future or that she would choose to undergo the procedure in the future. Rather, they contend that the diagnosis for Amy Brossett is the development of degenerative arthritis in her injured hip in twenty to twenty-five

12

years.  The defendants argue that the effect this would have on the possible need for hip replacement surgery depends on Amy Brossett's future weight and activity levels, which are unknown.  Accordingly, it is argued that the opinion offered of a need for a future hip replacement is speculative and, as such, cannot serve as a basis for the award of future medical expenses.

Amy Brossett contends that the award is supported by the testimony presented by one of her treating physicians, orthopedic surgeon, Dr. Vanda Davidson (Dr. Davidson), and her expert economist, Dr. Roy Douglas Womack (Dr. Womack).  Dr. Davidson opined that it was more probable than not that Amy Brossett would need the hip replacement surgery in the future.  He also testified that "there conceivably could be some limited surgeries on the foot and on the knee down the road," but stated that those would be less likely than he anticipated the hip surgery would be.

Amy Brossett argues that Dr. Womack calculated that the conservative present value of a future hip replacement surgery, alone, would be $36,052.00, based on the current day costs associated with that surgery.  Dr. Womack also took into consideration the lost wages that would be incurred for six months of work that Ms. Brossett would necessarily miss as a consequence of undergoing such a surgery.  He calculated a conservative estimate of this loss by taking into consideration Amy Brossett's current full-time pay rate of $6.25 per hour and determined that she could face a loss of income in the amount of $6,500.00 if she were to undergo the surgery. Therefore, although the total estimated future medical expenses, he concluded, would be $42,552.00, she argues that the jury's award is a reasonable award based on the facts presented.

Future medical expenses are reviewed by an appeals court pursuant to the

manifest error standard of review. *Armentor v. Safeway Ins. Co.*, 07-805 (La.App. 3 Cir. 12/19/07), 972 So.2d 444 (citing *Cormier v. Colston*, 05-507 (La.App. 3 Cir. 12/30/05), 918 So.2d 541). A plaintiff seeking an award for future medical expenses is required to establish those expenses "with some degree of certainty." *Armentor*, 972 So.2d at 448. The plaintiff is required to show that it is more probable than not that the expenses will be incurred. *Id*. We have held that "[a]wards will not be made in the absence of medical testimony that they are indicated and setting out their probable cost." *Id*. Moreover, as we stated in *Veazey v. State Farm Mut. Auto Ins. Co.*, 587 So.2d 5, 8 (La.App. 3 Cir. 1991), "an award for future medical expenses cannot be based on mere speculation of the jury. Much stronger proof, such as medical testimony of the specific expenses to arise, should be required for such an award."

Given the opinion of Dr. Davidson that it was more probable than not that Amy Brossett would need hip replacement in the surgery due to her likely development of degenerative arthritis in that hip, but that he opined that it was less likely that the other medical surgeries mentioned would be needed, we find that the $50,000.00 award for future medical expenses is not reasonably supported by the record. Accordingly, we reduce the award of future medical expenses to $42,552.00.

### General Damages

*Standard of Review*

General damages are defined as those awards that are "inherently speculative in nature and cannot be fixed with mathematical certainty." *Wainwright v. Fontenot*, 00-492, p. 6 (La. 10/17/00), 774 So.2d 70, 74 (citation omitted). The assessment of the appropriate amount of these damages is, therefore, a question of fact to be

14

determined by a judge or jury. *Youn v. Maritime Overseas Corp.*, 623 So.2d 1257 (La.1993). The fact finder's determination is accorded "great deference" on appeal, therefore, the appeal court's role is to review the exercise of that discretion. *Youn*, 623 So.2d 1257. Moreover, "[t]he facts submitted as evidence must be reviewed by the appellate court in the light most favorable to the judgment rendered." *Venissat v. St. Paul Fire & Marine Ins. Co.*, 06-987, p. 17 ( La.App. 3 Cir. 8/15/07), 968 So.2d 1063, 1074 (citing *Arceneaux v. Domingue*, 365 So.2d 1330 (La.1978)). The supreme court has explained how to apply the standard of review for abuse of discretion:

> Each case is different, and the adequacy or inadequacy of the award should be determined by the facts or circumstances particular to the case under consideration.
>
> In *Reck [v. Stevens,* 373 So.2d 498 (La.1979)]*, this court disapproved the appellate court's simply reviewing the medical evidence and then concluding that the award for those injuries was excessive, without taking into consideration the particular effect of the particular injuries on the particular plaintiff. This court further disapproved of the use of a scale of prior awards in cases with generically similar medical injuries to determine whether the particular trier of fact abused its discretion in the awards to the particular plaintiff under the facts and circumstances peculiar to the particular case. The initial inquiry is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the "much discretion" of the trier of fact. *Gaspard v. LeMaire*, 245 La. 239, 158 So.2d 149 (1963); *Ballard v. National Indem. Co. of Omaha, Neb.*, 246 La. 963, 169 So.2d 64 (1964); *Lomenick v. Schoeffler*, 250 La. 959, 200 So.2d 127 (1967). Only after such a determination of an abuse of discretion is a resort to prior awards appropriate and then for the purpose of determining the highest or lowest point which is reasonably within that discretion. *Coco v. Winston Industries, Inc.*, 341 So.2d 332 (La.1976); *Bitoun v. Landry*, 302 So.2d 278 (La.1974); *Spillers v. Montgomery Ward & Co.*, 294 So.2d 803 (La.1974).

> The standard for appellate review of general damage awards is difficult to express and is necessarily non-specific, and the requirement of an articulated basis for disturbing such awards gives little guidance as to what articulation suffices to justify modification of a generous or stingy award. Nevertheless, the theme that emerges from *Gaspard v. LeMaire*, 245 La. 239, 158 So.2d 149 (1963) through *Coco v. Winston Industries, Inc.*, 341 So.2d 332 (La.1976), and through *Reck* to the present case is that the discretion vested in the trier of fact is "great," and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.

*Youn v. Maritime Overseas Corp.*, 623 So.2d 1257, 1260-61 (La.1993). We shall apply this standard to the multiple general damage awards being challenged by the defendants on appeal.

*Pain and Suffering*

The defendants argue that the jury's award of $750,000.00 to Amy Brossett for pain and suffering is abusively high and should be reduced to $300,000.00. The defendants claim that the jury's award does not reflect a consideration of Amy Brossett's "remarkable" recovery from her injuries, but rather reflects an impermissible award based on sympathy. The defendants contend that the evidence presented showed that Amy Brossett was walking and able to return to work six months after the accident and that within two years she had completed all medical treatment and had been released to return to work without restriction. The defendants also contend that Amy Brossett has been able to return to a relatively normal lifestyle, aside from her testimony of experiencing occasional knee pain, knee weakness, and "catching" in her hip joint. The award, they argue, is out of the range of the quantum

16

of damages awarded in cases of multiple injuries such as hers and exceeds the amounts awarded in cases to persons who were not able to return to work as quickly as she was.

The record reflects that Amy Brossett was pinned in the wreckage of her vehicle for well over an hour while she remained conscious and in excruciating pain. She also watched and heard her husband die as they both lay trapped in the wreckage. The evidence in the record further establishes that Amy Brossett suffered severe injuries due to the crash. They were described by Dr. Davidson, one of her treating orthopedic surgeons on the night of the accident. The most severe injuries included multiple fractures in her right hip, which included a fracture to the socket of the "ball and socket" joint of the hip (an acetabular fracture). She also suffered a fracture to the upper femur bone of her right leg, an open fracture of the left kneecap, and a severely dislocated and broken left foot. Her kneecap was removed, resulting in an approximate ten percent disability. The broken foot was reset and the fractured bones therein were surgically secured with multiple pins. Amy Brossett testified at trial that she still suffers hip pain, experiences catching in her hip joint, suffers daily pain and swelling in her left foot and legs. She is unable to sit or walk for long periods of time due to the pain. Dr. Davidson testified that she experiences arthritis at her sites of injury as well.

Amy Brossett was immobile for three months after the crash and was unable to care for her infant daughter for months thereafter. Because of her injuries, she was hospitalized and unable to attend her husband's funeral. Besides suffering from grief and shock, she testified to suffering fear, anxiety, and depression due to the reality of having to raise and provide for her child, alone, for the first time. Although Amy

17

Brossett worked full-time prior to the accident, testimony and evidence established that Craig Brossett was the primary wage earner for the family, having worked two jobs in the year prior to his death in order to provide for his family. Amy Brossett testified that she was able to return to full-time work approximately one-year after the accident, after progressing from a wheel-chair to a walker and finally to a cane. She attributed her recovery accomplishments to needing to be able to take care of her infant daughter.

Considering these facts, we find that the jury's award for pain and suffering is reasonably supported by the record and is not an abuse of its vast discretion in quantifying these damages.

*Loss of Enjoyment of Life*

"Loss of enjoyment of life is a compensable component of general damages." *McGee v. A C & S, Inc.*, 05-1036, p. 4 (La. 7/10/06), 933 So.2d 770, 774. It involves the inherently speculative valuation of the quality of a person's life and cannot be definitively measured. *Id.* These damages refer to the "detrimental alterations of a person's ability to participate in the activities or pleasures of life that were formerly enjoyed." *Id.* at 773. Whether or not this element of general damages is recoverable, however, is a question that depends on the particular facts of the case, and is to be left to the discretion of the trier of fact to be determined on a case-by-case basis. *Id.*

The defendants claim that the award of $75,000.00 to Amy Brossett for loss of enjoyment of life also constitutes an abuse of the jury's discretion because she failed to establish that after the accident she has suffered any limitations on her life, other than not being able to play catch with her daughter. The award then contend, is therefore, improperly based on sympathy, considering the minimal limitations Amy

Brossett discussed during her testimony.

Testimony from Amy, her close friend, Cassie Campbell, who was also her bridesmaid, in addition to that offered by her father and one of her aunts, Margaret Bryant, all established that Amy's life was altered by the accident. She has exhibited a changed outlook on life after losing her husband and having to face raising and supporting a child as a single mother. Testimony was offered that she exhibited more fearfulness and nervousness after the accident. In regards to vehicles, she does not allow Emily, who is now ten, to travel in a vehicle with anyone, even family members, because of her experience. In addition, testimony was offered that her physical limitations caused by the extensive injuries to both of her legs have limited her ability to engage in activities such as athletic play with her daughter and other activities, that she might want to engage in, such as shopping; she is simply not free to do everything that she would like to do because of her physical condition, although she makes an effort to live as normally as she can.

Accordingly, we do not find that the jury abused its wide discretion in quantifying Amy Brossett's damages for loss of enjoyment of life, based on the evidence presented in the record.

*Disability*

Disability damages are recognized as those general damages constituting any permanent disability or impairment that is secondary to the injuries sustained in the accident. *Matos v. Clarendon Nat'l Ins. Co.*, 00-2814 (La.App. 1 Cir. 2/15/02)*, 808 So.2d 841. In this case, the jury awarded Amy Brossett $40,000.00 in disability damages. Defendants argue there was no proof presented at trial of any physical or mental impairment, therefore, the damages constitute an abuse of discretion.

We disagree. Testimony and evidence presented at trial established that Amy Brossett was twenty-three years old when the accident occurred. There was no testimony presented of her suffering from any physical or emotional disabilities or pain prior to the accident. Rather, she was a newly married female, a working mother, and caretaker of her home and infant child. As a consequence of the accident, ten years later, she continues to suffer from pain and swelling in her foot and legs, walks with a limp, and is unable to sit or stand for long periods of time, limiting her ability to be mobile for long periods of time.

Dr. Davidson testified that she suffers from a ten percent weakness in her ability to straighten out her leg caused by the removal of her kneecap. This loss of the kneecap also causes problems with her ability to climb steps without needing a support to stabilize herself. He stated that "the mid-foot fracture dislocation is debilitating and the open fracture of the knee was certainly debilitating, with some permanent impairment associated with these injuries." He recognized her continuing limitations by noting that her progress of recovery was "pretty balanced" considering her ability to try to do what she can do with her continuing pain and swelling in her foot, weakness in the knee, and catches in the hip.

Considering this, we cannot say that the jury's award offends a sense of fairness and constitutes an abuse of its discretion in the quantifying these damages.

*Loss of Future Economic Support*

Amy Brossett and her daughter, Emily, were awarded a joint award of $500,000.00 for the loss of future economic support caused by Craig's death. The only calculation presented at trial was that offered by the plaintiffs' expert economist, Dr. Womack. Defendants contend that he testified that his calculations established

20

a future loss (from the date of trial) of $394,531.00. They argue that $500,000.00 award is therefore, unsupported by the evidence presented and should be reduced to $394,531.00. Amy Brossett contends that the jury's award is reasonably supported by the evidence presented, considering the fact that Dr. Womack's calculation of the present value of the total economic loss as a result of Craig's death is $567,661.00.

The record shows that Dr. Womack indeed calculated a total economic loss with a present value of $567,661.00. This figure was composed of two components. He calculated the past economic loss suffered from the date of the accident to the date of the trial, $173,130.00, and the amount of economic loss estimated post-trial (future), in the amount of $394,531.00. These figures included Craig's wages earned in the year prior to his death, $19,592.00, and included a value for the loss of his household services at $8.00 per hour for forty hours per week. Dr. Womack testified that his calculation was conservative because it was based on Craig's income earned from working two jobs in 1997. He did not take into consideration Craig's new job as a delivery routesman for Borden that he had begun working approximately three months before the accident. He was earning approximately $2,000.00 per month on this new job—an estimated $5,000.00 per year more than he had earned in the year preceding his death.

He further testified that he based his figures on a work-life expectancy of 22.15 years set forth by the Bureau of Labor Statistics. He stated that use of the Social Security Administration's (S.S.A.) statistics would have allowed him to estimate a work-life expectancy of 32 years—ten more years than was actually used in his calculation.

Amy Brossett contends that the jury heard and took into consideration this

evidence of Craig's new job and pay raise, as well as Dr. Womack's testimony and that of others, regarding Craig's industriousness as a worker. Testimony from multiple witnesses was presented, stating that Craig "did what it took" to provide for his family, as evidenced by his working two jobs prior to obtaining the better-paying job with Borden. The sentiment was that he would more than likely have continued to generate more in wages over the course of his work life had he lived beyond the age of twenty-four.

"An award for loss of support includes the loss of past support from the date of death to the date of trial and loss of future support from the date of trial through the duration of the decedent's work-life expectancy." *Magee v. Pittman*, 98-1164, p. 22 (La.App. 1 Cir. 5/12/00), 761 So.2d 731, 748-49. The process for determining this measure of damages was further explained by the first circuit as follows:

> Awards for future lost income are inherently speculative and intrinsically insusceptible of being calculated with mathematical certainty, thus the courts must exercise sound judicial discretion to determine these awards. The awards should be consistent with the record and not work a hardship upon either party. Factors to be considered in determining a proper award for lost future income are the decedent's physical condition before his death, the decedent's past work history and consistency thereof, the amount the decedent probably would have earned absent the death, and the probability that the decedent would have continued to earn wages over the remainder of his working life. *See Robbins v. State, Department of Labor*, 31,590, p. 8 (La.App. 2nd Cir. 2/24/99), 728 So.2d 991, 996-97.

*Id.* at 749.

Regarding Craig's health status, we find that the only testimony offered of a negative health history was the fact that he was taking high blood pressure medication before his death. No expert medical opinion was offered regarding a diminished life

22

expectancy however. The jury heard Dr. Womack testify that the S.S.A.'s statistics for work life expectancy were greater than the more conservative Bureau of Labor Statistics' figure that he used.

We recognize that the jury had the authority to accept and reject the testimony of Dr. Womack and may have decided to consider the S.S.A.'s statistic for work-life expectancy in its determination of future economic loss. They could have reasonably concluded that it was more likely that Craig would have earned even more income than the projected amounts set forth by Dr. Womack, based on the testimony regarding his industriousness. A jury's ability to consider such evidence and alter a general damage award such as this, accordingly, has been recognized by this and other courts:

> The jury did not award the exact figure that either expert calculated. Nevertheless, it is permitted to "substitute common sense and judgment for that of an expert witness when such a substitution appears warranted on the record as a whole." [*Green v. K-Mart Corp.*, 03-2495, p. 5 (La. 5/25/04), 874 So.2d 838, 843.] "Credibility determinations are for the trier of fact, even as to the evaluation of expert witness testimony. A fact-finder may accept or reject the opinion expressed by an expert, in whole or in part."

*Guidry v. Coregis Ins. Co.*, 04-325, p. 24 (La.App. 3 Cir. 12/29/04), 896 So.2d 164, 185. Accordingly, we find no abuse of the jury's discretion in quantifying the damages of future of loss of economic support in the amount of $500,000.00.

*Wrongful Death Damages to Emily Brossett Porche*

The jury awarded Emily Brossett Porche $500,000.00 in damages for the wrongful death of her father. The defendants argue that this award is abusively high because Emily was an infant when her father was killed and lacked the requisite awareness of his death to justify such an award. Moreover, they argue that no

23

evidence was presented regarding any negative effect that Craig's death has had on her life. Rather, they contend, it was established that Emily is a well-adjusted child. According to the defendants, then, the jury's award is improperly based on sympathy and speculation, and for this reason, the wrongful death award should be reduced to $50,000.00, commensurate with other cases in which infants were awarded wrongful death damages due to the loss of a parent.

The plaintiffs argue that the award is not an abuse of discretion, considering the testimony that was presented to the jury of the dedication to, and love of, Emily that Craig showed her as an infant. He was a "hands-on" father and family-man who spent the majority of his free time with his family. He was consistently described in testimony offered by family members and friends as an extraordinary father who had a strong sense of love and devotion for his child; he cried when she was born, participated in her daily care, and "always had her in his arms." Amy Brossett testified that a large measure of her grief was based in knowing that Emily would not know Craig and that she had suffered the loss of a great father.

We find that the facts and evidence presented support the jury's award of $500,000.00 to Emily for the wrongful death of her father. A wrongful death action seeks to compensate a beneficiary for his or her own injuries suffered from the moment of the victim's death and thereafter. *McGee*, 933 So.2d 770. It is undisputed that Craig was a doting father. We recognize that a child's loss of a parent is a lifelong loss and, in this particular case, the jury must have been impressed by the extent of the loss imposed on Emily by her father's premature death. Based on the testimony presented of Craig's pre-death efforts and involvement with his child, it is almost certain that he would have been an integral part of her life. Emily was ten

years old at the time of the trial of this matter, and still faces a future of great life events that will be passed without her father's presence and involvement as well; therefore, we cannot say that the jury abused its discretion in quantifying this award of wrongful death damages, in this amount, considering the particular facts of this case.

*Exemplary Damages*

In Amy Brossett's Answer to the defendants' appeal, she seeks a reversal of the jury's denial of exemplary damages. She asserts that the elements were satisfied for an award of exemplary damages pursuant to La.Civ.Code art. 2315.4, and that the jury abused its discretion in failing to assess these damages. She argues that Howard was clearly intoxicated but attempted to drive herself home anyway, expressing a wanton and reckless disregard for the safety of the public. Amy Brossett also asserts that Howard's intoxicated driving caused the accident that killed Craig Brossett and left her with severe injuries. Amy Brossett requests that separate awards of $125,000.00, each, be granted to her and her daughter, Emily.

The defendants contend that the elements of La.Civ.Code art. 2315.4 were not met in this case and that the jury's decision was not manifestly erroneous. They also argue that the jury possessed discretion to deny exemplary damages, and in this case, its decision to reject an award of exemplary damages was reasonable.

Louisiana Civil Code Article 2315.4 states:

**Art. 2315.4. Additional damages; intoxicated defendant**

> In addition to general and special damages, exemplary damages may be awarded upon proof that the injuries on which the action is based were caused by a wanton or reckless disregard for the rights and safety of others by a defendant whose intoxication while operating a motor vehicle was a cause in fact of the resulting injuries.

25

In summary, exemplary damages may be awarded upon proof (1) that the defendant was intoxicated or had a sufficient quantity of intoxicants to make him or her lose normal control of his mental and physical facilities; (2) the drinking was a cause-in-fact of the accident; and (3) the injuries were caused by a wanton and reckless disregard for the rights and safety of others. *See Brumfield v. Guilmino*, 93-366 (La.App. 1 Cir. 3/11/94), 633 So.2d 903 (citation omitted).

"Whether the elements requisite to recovery under [La.Civ.Code] art. 2315.4 have been proven is a question of fact, not to be set aside in the absence of manifest error." *Angeron v. Martin*, 93-2381, p. 4 (La.App. 1 Cir. 12/22/94), 649 So.2d 40, 43. However, the decision to award exemplary damages rests within the discretion of the trier of fact. La.Civ.Code art. 2315.4; *see Khaled v. Windham*, 94-2171 (La.App. 1 Cir. 6/23/95), 657 So.2d 672, *writ dismissed*, 95-1914 (La. 11/1/95), 661 So.2d 1369; *Boulmay v. Dubois*, 593 So.2d 769 (La.App. 4 Cir. 1992). Even when the plaintiff proves the elements of the statute, the jury does not abuse its discretion in refusing to award exemplary damages when the statute does not mandate it. *Khaled*, 657 So.2d 672.

Although cases such as these are tragic, the record reasonably supports the jury's choice to not award exemplary damages in this case. Howard testified at the trial and obviously impressed the jury with her remorsefulness. The jury could have taken into consideration her admission of fault and liability, as well as her submission of a blind plea of guilt to the criminal court. The jury may have been impressed by her lack of a negative driving history or criminal record prior to the accident and her clean driving record since completion of the related criminal proceedings. Moreover, the jury may have positively viewed Howard's compliance with her court-ordered

26

restitution payments and orders to speak with groups regarding the consequences of her decision to drive while intoxicated. Howard testified that her continued status as a felon has prevented her from returning to her career as a perfusionist (operator of the heart and lung machine during open heart surgeries), because she is unable to obtain privileges to work in hospitals.

The jury also heard testimony regarding Howard's attempts to get a designated driver as the evening progressed. She testified that once she recognized that she was intoxicated, she stopped drinking alcohol and drank water instead, in attempts to make herself sober. She also began asking co-workers to make sure that she got home safely. This all may have been considered by the jury as a self-awareness of her impaired condition and attempts, although unsuccessful, to do no harm.

Consequently, although we would have sustained an award for exemplary damages if the jury had rendered such an award, we find no abuse of discretion on the part of the jury in failing to award exemplary damages in this case.

### CONCLUSION

The Exception of No Right of Action is overruled. The judgment of the trial court is amended to reflect a reduced award of $42,552.00 in future medical expenses to Amy Brossett. All other damages set forth in the judgment are affirmed. Costs of this appeal are assessed to defendants-appellants-appellees, Melody Howard and Progressive Insurance Company.

**EXCEPTION OVERRULED; JUDGMENT AFFIRMED, AS AMENDED.**

27