THIBODEAUX, Chief Judge.
_[jPlaintiff, Victor Rachal, filed this suit on behalf of his minor son, Nicholas, against Justin Brouillette and State Farm Mutual Automobile Insurance Company for the wrongful death of Nicholas’s mother, Joann Isaac. Mr. Brouillette, driving a large sports utility vehicle, crashed into Ms. Isaac and her two daughters as they walked along a highway in Alexandria, Louisiana. All three individuals were killed. Defendants admitted liability before trial, leaving only the issue of damages for the jury. The jury awarded Nicholas $2,800,000 in compensatory and $100,000 in exemplary damages. Defendants appeal the amount of compensatory damages, and Plaintiff appeals the amount of exemplary damages. For the following reasons, we affirm the compensatory damages and increase the exemplary damages to $500,000.
I.

ISSUES

We will consider:
(1) whether the verdict form submitted to the jury is duplicative;
(2) whether the jury awarded an excessive amount of general damages;
*1141 (3) whether the jury erroneously awarded damages for loss of financial support;
(4) whether the jury erroneously found that Mr. Brouillette caused the accident while under the influence of a controlled dangerous substance; and
(5) whether the jury awarded an insufficient amount of exemplary damages.
_b.II-

FACTS AND PROCEDURAL HISTORY

Mr. Brouillette was driving erratically at a high speed when he inexplicably left the highway and headed toward the right-hand shoulder. He immediately struck Ms. Isaac and her two minor daughters as they walked side-by-side on the shoulder near the grass. Mr. Brouillette continued driving past the shoulder, with Ms. Isaac and one of her daughters still on the hood of his car, until he struck one culvert, flew in the air, and crashed into a second culvert. Ms. Isaac and her two daughters were killed.[1] Authorities discovered marijuana and hydrocodone in Mr. Brouillette’s system immediately after the accident. He was driving at ninety-one miles per hour when he hit the victims.
Mr. Brouillette was convicted of three counts of vehicular homicide and sentenced to five years in prison for each count.[2] After Mi*. Rachal sued on behalf of Nicholas, State Farm and Mr. Brouillette admitted liability before the jury trial started, leaving only the issue of damages for the jury’s consideration. After a three-day trial, the jury awarded Nicholas $2,500,000 in general damages, $300,000 in loss of financial support damages, and $100,000 in exemplary damages for his mother’s wrongful death. Defendants appeal the judgment and assert the following four issues: (1) the jury verdict form is duplicative; (2) the award of general damages is excessive; (3) the jury erroneously awarded Plaintiff damages for loss of financial support; and (4) the jury erroneously determined that |sMr. Brouillette was impaired during the accident and that his impairment caused the accident. Mr. Rachal appeals the amount of exemplary damages as insufficient.
III.

LAW AND DISCUSSION

Standard of Review

A jury’s award of damages is a finding of fact. We review the award for abuse of discretion. Ryan v. Zurich Am. Ins. Co., 07-2312 (La.7/1/08), 988 So.2d 214. The discretion vested in the trier of fact is so great that a court of appeal should rarely disturb an award of damages. In fact, “[i]t is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.” Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). We will not set aside the award absent manifest error or unless it is clearly wrong. Ryan, 988 So.2d 214. Further, the trial court’s decision to separate the elements of the general damage award on *1142 the jury verdict form was also a finding of fact, as was the jury’s decision to award punitive damages. Id. These factual findings are also subject to the manifest error standard of review.
| ¿Discussion

Jury Verdict Form

State Farm and Mr. Brouillette argue that the trial court erred by submitting a verdict form to the jury that separated the elements of the general damage award. Specifically, the jury verdict form contained a separate line for mental anguish, grief, and anxiety, to which the jury awarded Nicholas $1,000,000 and a separate line for loss of love and affection, to which the jury also awarded him $1,000,000. Defendants assert that these two elements are duplicative. We disagree.
Louisiana Civil Code Article 2315 mandates that “a tortfeasor must compensate a tort victim for all of the damages occasioned by his act.” Compensatory damages are divided into special damages and general damages.[3] General damages include physical and mental pain and suffering, inconvenience, loss of gratification, and other losses of lifestyle that cannot be definitively measured with money. McGee v. AC And S, Inc., 05-1036 (La.7/10/06), 933 So.2d 770. These damages are “routinely dissected” on jury verdict forms. Id. at 774. As long as the damage elements are conceptually distinct from one another, the trial court has discretion to separate them on the verdict form. Id. A prior panel of this court addressed this issue and determined that loss of love and affection and mental anguish, grief, and anxiety are not conceptually different and should not be separated on the jury verdict form. Hardy v. Augustine, 10-946 (La. App. 3 Cir. 2/2/11), 55 So.3d 1019. That court held that grief is the expression | sof the loss of love and affection that the plaintiff experiences, not a distinct element of damage. We disagree.
Mental anguish, grief, and anxiety, on one hand, and loss of love and affection, on the other hand, are independent concepts. Mental anguish and grief refers to the “pain, discomfort, inconvenience, anguish, and emotional trauma” that accompany the injury. McGee, 933 So.2d at 775. In this case, it refers to the initial shock, anxiety, and distress that a ten-year old experiences as a result of the loss of a parent. Loss of love and affection, on the other hand, goes beyond the initial grief and emotional trauma. These damages compensate Nicholas for the enduring and irreversible loss of his mother. While grief and anguish will wane over time, Nicholas will always feel the absence of the traditional characteristics of the mother-son relationship. Put another way, grief is the presence of an emotion as a result of a loved one’s death. Loss of love and affection, however, is the absence of an experience; specifically, the absence of a love previously bestowed.[4] These two categories are distinct and separate injuries that Nicholas experienced and will continue to experience as a result of his mother’s premature and wrongful death. *1143 We affirm the trial court’s decision to separate them on the jury verdict form.
The decision to separate the categories must still be evidentiary-based and is contingent upon adequate and sufficient proof that both damages are appropriate. Further, as always, the makeup of the jury verdict form is within the |fitrial court’s discretion. Finally, Hardy v. Augustine is overruled to the extent that it deviates from our opinion today.
Defendants also argue that loss of society, service, and consortium, which was a separate line on the verdict form, is duplicative of loss of love and affection and mental anguish and grief. We find no merit in this argument. The factors of a loss of consortium claim include: (1) loss of society and companionship; (2) loss of support and family income; and (3) loss of performance of material services, including educational and household help for children. Kilpatrick v. Alliance Cas. and Reinsurance Co., 95-17 (La.App. 3 Cir. 7/5/95), 663 So.2d 62, writ denied, 95-2018 (La.11/17/95), 664 So.2d 406. These factors are noticeably different from the elements of loss of love and affection and mental anguish and grief. Further, Louisiana courts regularly allow the jury to award a separate amount for loss of service, society, and consortium. See, e.g. Brossett v. Howard, 08-535 (La.App. 3 Cir. 12/10/08), 998 So.2d 916, writ denied, 09-77 (La.3/6/09), 3 So.3d 492. We affirm the trial court’s decision to separate these categories on the jury verdict form.

General Damage Award Review

Defendants assert that the award of $2,500,000 in general damages was excessive. We disagree. We will review the damage award for abuse of discretion.[5] Only if no reasonable trier of fact could award Nicholas $2,500,000 will we disturb the award. Youn, 623 So.2d 1257.
17Nicholas enjoyed a close, loving relationship with his mother. Although his parents were separated and Nicholas lived primarily with his father, he spent most weekends with his mother. Ms. Isaac and Mr. Rachal went to great lengths to ensure their son was in the best environment for him considering his struggles with Attention Deficit Hyperactivity Disorder (ADHD).[6] This thoughtfulness and attention shows Ms. Isaac was extremely involved in her son’s life. Defendants try to minimize the effects of Ms. Isaac’s death on Nicholas; however, the evidence suggests that Nicholas has endured severe physical and mental trauma as a result of this tragedy. Following his mother’s death, Nicholas suffered from hallucinations and suicidal thoughts and gained an extraordinary amount of weight. Nicholas’s father described how Nicholas has left school on more than one occasion to visit his mother’s grave and cry. The jury was apparently convinced that Ms. Isaac’s death had a profound effect on Nicholas. This finding is not clearly wrong; therefore, the jury did not abuse its discretion *1144 by awarding $2,500,000 in general damages.

Loss of Financial Support

Defendants contend that the jury erroneously awarded Nicholas loss of financial support damages. We find no merit in this contention. The factors considered for an award of loss of financial support include the decedent’s present earnings; age and life expectancy; the minor’s age at the time of decedent’s death; the decedent’s work life expectancy; the possibility of a decrease or increase in learnings with age; and any other factors relevant to the premature demise of the decedent. Nigreville v. Federated Rural Elec. Ins. Co., 93-1202 (La. App. 3 Cir. 7/13/94), 642 So.2d 216, writ denied, 94-2803 (La.1/27/95), 649 So.2d 384. Although Ms. Isaac’s income of $14,322 the year she died was not dramatically high, it steadily increased each year, suggesting she would have continued to strive to improve her financial situation had she lived. Ms. Isaac clothed Nicholas, fed him, and took care of him. Defendant argues that because Mr. Rachal did not present testimony regarding exactly how much money Ms. Isaac contributed to raising her son, we should presume she did not contribute anything. Common sense, however, dictates that since Ms. Isaac and Mr. Rachal maintained joint custody of Nicholas, Ms. Isaac financially contributed to her son’s upbringing. Further, the jury evidently believed that Ms. Isaac would have provided for her son until she reached the limits of her work life expectancy, some thirty years in the future. Although $300,000 may be on the higher end of the scale, it was not abusively high.

Exemplary Damages: Impairment

Defendants assert that the jury should not have awarded exemplary damages because the evidence was insufficient to establish Mr. Brouillette was impaired such that his impairment caused the accident. We find this argument meritless. Exemplary damages may be awarded upon proof that: (1) defendant was intoxicated or had ingested a sufficient quantity of a controlled dangerous substance to make him lose control of his mental or physical faculties; (2) the intoxication was a cause-in-fact of the accident; and (3) the injuries were caused by a wanton and reckless disregard for the rights and safety of others. La.Civ.Code |9art. 2315.4; Brossett, 998 So.2d 916. Mr. Brouillette’s own admission and the testimony presented at trial indicate that he was impaired when the accident occurred and his impairment caused the accident. Moreover, the circumstances surrounding the accident signify that he had a wanton and reckless disregard for the safety of others.
First, Mr, Brouillette pleaded guilty to three counts of vehicular homicide in violation of La.R.S. 14:32.1. This plea required Mr. Brouillette to admit that he was under the influence of a controlled dangerous substance and that this was a cause-in-fact of the accident. Mr. Brouillette admits, therefore, that he was impaired and that his impairment caused the accident.
Second, Dr. William George, a pharmacologist and toxicologist, examined the results of a blood test Mr. Brouillette submitted to immediately after the accident. Dr. George testified that Mr. Brouillette had ingested marijuana within six to twelve hours before his blood was drawn. The doctor also found hydrocodone in Mr. Brouillette’s system. He further testified that the level of marijuana and hydroco-done in Mr. Brouillette’s blood was sufficient to produce the effects of decreased reaction time, sedation, inattention, blurred peripheral vision, and drowsiness. Dr. George unequivocally stated that the amount of both drugs found in his system *1145 was enough to make Mr. Brouillette lose control of his mental and physical faculties.
The facts of this case demonstrate that Mr. Brouillette was not in control of his mental or physical faculties and that he had a wanton and reckless disregard for Ms. Isaac’s and her children’s safety. Mr. Brouillette was traveling at ninety-one miles per hour when he hit Ms. Isaac and her two daughters and the evidence suggested he sped up after he hit them, instead of slowing down. Further, hnMr. Brouillette carried two of the victims on the hood of his car for 184 feet until finally crashing into a culvert. Before hitting the victims, Mr. Brouillette was swerving in and out of traffic and driving erratically. This accident was not the product of someone in control of his actions.[7] We find the jury properly determined Mr. Brouillette’s impaired state caused the accident.

Exemplary Damages: Amount

Plaintiff argues that the award of exemplary damages, $100,000, was unreasonably low. We agree and increase the award to $500,000. The purpose of exemplary damages is to punish the defendant and deter future similar behavior. These damages are regarded as a fine or penalty for the protection of the public interest. Mosing v. Domas, 02-12 (La.10/15/02), 830 So.2d 967. The following factors are considered in determining whether the award is too high or low: (1) the nature and extent of the harm to the plaintiff; (2) the wealth or financial situation of the defendant; (3) the character of the conduct involved; (4) the extent to which such conduct offends a sense of justice and propriety; and (5) the amount necessary to deter similar conduct in the future. Id, The amount of exemplary damages is the result of a fact-intensive inquiry into the case. These awards should only be disturbed if the damages are such that “all mankind at first blush would find [them] outrageous.” Id. at 972 (quoting Honda Motor Co., Ltd. v. Oberg, 512 U.S. 415, 421-22, 114 S.Ct. 2331, 129 L.Ed.2d 336 (1994)).
The circumstances of this case illustrate the need to increase the exemplary damages. Ms. Isaac is not merely injured, she is deceased; therefore, [nthe injury to this plaintiff is great. Defendants suggest that because Mr. Brouillette had only “a small amount” of drugs in his system, his behavior was not as reprehensible as Mr. Rachal asserts. This “small amount” of drugs was apparently enough to cause Mr. Brouillette to drive erratically at a high speed, kill three people, and not remember any of it.[8] We find this behavior sufficiently reprehensible.
Defendants also argue that Mr. Brouil-lette’s ten years in prison is punishment enough to deter this conduct in the future. The court notes, however, that Mr. Brouil-lette will actually spend only five years in prison since two of his five-year sentences were ordered to run concurrently (the other five year sentence was suspended). Five years in prison for killing three people is not as punitive as Defendants contend. Mr. Brouillette was previously convicted of driving while intoxicated, and he was in another car accident prior to this one. Moreover, he showed very little remorse at trial by consistently denying that he ingested marijuana or hydrocodone, despite scientific evidence of the drugs in his system. Mr. Brouillette clearly has no *1146 regard for the safety of others while he is driving a vehicle and continually refuses to obey the law. As further evidence of Mr. Brouillette’s disregard for the law, he was disciplined for possessing synthetic marijuana while in prison. Likewise, on a separate occasion a month later, he admitted to using marijuana and an opiate substance when ordered to undergo a random drug test. We cannot emphasize enough the need to deter this conduct.
Defendants suggest that we should refrain from increasing the award of exemplary damages because Mr. Brouil-lette will never be able to pay such a 112high award. The defendant’s financial situation, however, is only one factor to consider and is not dispositive.[9]
We find the jury abused its discretion by awarding an unreasonably low amount of exemplary damages. Accordingly, we have determined that $500,000 is an amount sufficient to punish Mr. Brouil-lette’s behavior and protect the public interest.
V.

CONCLUSION

For the reasons above, we affirm the award of general damages and increase the award of exemplary damages. Costs of this appeal are assigned to Defendants, Justin Brouillette and State Farm Mutual Automobile Insurance Company.
AFFIRMED AND AFFIRMED AS AMENDED.
AMY, J., concurs in part, dissents in part, and assigns reasons.
GENOVESE, J., concurs in part, dissents in part, and assigns reasons.
GREMILLION, J., concurs in part and dissents in part for the reasons provided by Judge AMY.
CONERY, J., dissents and assigns written reasons.

. The causes of action stemming from the deaths of Ms. Isaac’s daughters have been settled and are not at issue in this appeal.

. One of Mr. Brouillette’s five-year sentences was suspended and the other two were ordered to ran concurrently. Mr. Brouillette will, therefore, serve five years in prison for this crime; he is scheduled to be released in September 2013.

. No special damages are at issue in this appeal.

. To illustrate this, consider the effect of a mother’s death on two individuals: a one-year old toddler and a ten-year old adolescent. The toddler may be too young to experience the mental anguish and grief attendant such a drastic loss; he will, however, experience the absence of his mother's love and affection throughout his lifetime. The adolescent, on the other hand, will experience both emotions to a great degree. The ability to distinguish the two elements in different circumstances demonstrates their differences.

. Defendants contend that because the jury verdict form was duplicative, it was also misleading and, therefore, we must review the damage award de novo. We find the verdict form was not duplicative; therefore, the appropriate standard is abuse of discretion.

. Nicholas was diagnosed with ADHD before his mother's death and had frequent troubles in school before and after the accident. Defendants use these behavioral issues to question how much grief Nicholas actually experienced as a result of his mother’s death. We find Nicholas’s ADHD irrelevant to his entitlement to damages. This superficial linkage is a non sequitur. Further, Defendants’ contention that Nicholas’s condition somehow diminishes the love, affection, and attention his mother showed him or the grief he experiences as a result of her loss is unseemly.

. In fact, Officer Dean White, the highest in command of the accident investigation, testified at trial that the "unnecessary deaths ... were caused by the reckless and inattentive driving of Justin Brouillette without regard for the safety of others.”

. Mr. Brouillette claimed at trial that he did not remember the accident.

. We also note that in the context of exemplary damages the defendant's financial situation is pertinent primarily when the defendant is a large corporation, such that a small amount of damages would not deter wrongful conduct. Mosing, 830 So.2d 967. That is not the case here.