# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 12-794


VICTOR RACHAL

VERSUS

JUSTIN P. BROUILLETTE, ET AL.


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 233,446
HONORABLE HARRY FRED RANDOW, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## ULYSSES GENE THIBODEAUX
## CHIEF JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, John D. Saunders, Jimmie C. Peters, Marc T. Amy, Elizabeth A. Pickett, Billy H. Ezell, J. David Painter, James T. Genovese, Shannon J. Gremillion, Phyllis M. Keaty, and John E. Conery, Judges.

**Amy, J., concurs in part, dissents in part, and assigns reasons.**

**Genovese, J., concurs in part, dissents in part, and assigns reasons.**

**Gremillion, J., concurs in part and dissents in part for the reasons provided by Judge Amy.**

**Conery, J., dissents and assigns written reasons.**

**AFFIRMED AND AFFIRMED AS AMENDED**.

**Larry Alan Stewart**
**Stafford, Stewart & Potter**
**P. O. Box 1711**
**Alexandria, LA 71309**
**Telephone: (318) 487-4910**
**COUNSEL FOR:**
      **Defendant/Appellant - Justin P. Brouillette**

**Wilbert Joseph Saucier, Jr.**
**Wilbert J. Saucier, Jr., Inc.**
**2220 Shreveport Highway**
**Pineville, LA 71360**
**Telephone:  (318) 473-4146**
**COUNSEL FOR:**
    **Plaintiff/Appellee - Victor Rachal**

**Rodney James Littlefield**
**2125 St. Charles Avenue**
**New Orleans, LA 70130**
**Telephone:  (504) 522-7260**
**COUNSEL FOR:**
    **Plaintiffs/Appellees - John Dumars, et al.**

**THIBODEAUX, Chief Judge.**

Plaintiff, Victor Rachal, filed this suit on behalf of his minor son, Nicholas, against Justin Brouillette and State Farm Mutual Automobile Insurance Company for the wrongful death of Nicholas's mother, Joann Isaac. Mr. Brouillette, driving a large sports utility vehicle, crashed into Ms. Isaac and her two daughters as they walked along a highway in Alexandria, Louisiana. All three individuals were killed. Defendants admitted liability before trial, leaving only the issue of damages for the jury. The jury awarded Nicholas $2,800,000 in compensatory and $100,000 in exemplary damages. Defendants appeal the amount of compensatory damages, and Plaintiff appeals the amount of exemplary damages. For the following reasons, we affirm the compensatory damages and increase the exemplary damages to $500,000.

I.

## ISSUES

We will consider:

(1) whether the verdict form submitted to the jury is duplicative;

(2) whether the jury awarded an excessive amount of general damages;

(3) whether the jury erroneously awarded damages for loss of financial support;

(4) whether the jury erroneously found that Mr. Brouillette caused the accident while under the influence of a controlled dangerous substance; and

(5) whether the jury awarded an insufficient amount of exemplary damages.

II.

## FACTS AND PROCEDURAL HISTORY

Mr. Brouillette was driving erratically at a high speed when he inexplicably left the highway and headed toward the right-hand shoulder. He immediately struck Ms. Isaac and her two minor daughters as they walked side-by-side on the shoulder near the grass. Mr. Brouillette continued driving past the shoulder, with Ms. Isaac and one of her daughters still on the hood of his car, until he struck one culvert, flew in the air, and crashed into a second culvert. Ms. Isaac and her two daughters were killed.[1] Authorities discovered marijuana and hydrocodone in Mr. Brouillette's system immediately after the accident. He was driving at ninety-one miles per hour when he hit the victims.

Mr. Brouillette was convicted of three counts of vehicular homicide and sentenced to five years in prison for each count.[2] After Mr. Rachal sued on behalf of Nicholas, State Farm and Mr. Brouillette admitted liability before the jury trial started, leaving only the issue of damages for the jury's consideration. After a three-day trial, the jury awarded Nicholas $2,500,000 in general damages, $300,000 in loss of financial support damages, and $100,000 in exemplary damages for his mother's wrongful death. Defendants appeal the judgment and assert the following four issues: (1) the jury verdict form is duplicative; (2) the award of general damages is excessive; (3) the jury erroneously awarded Plaintiff damages for loss of financial support; and (4) the jury erroneously determined that

---

[1] The causes of action stemming from the deaths of Ms. Isaac's daughters have been settled and are not at issue in this appeal.

[2] One of Mr. Brouillette's five-year sentences was suspended and the other two were ordered to run concurrently. Mr. Brouillette will, therefore, serve five years in prison for this crime; he is scheduled to be released in September 2013.

Mr. Brouillette was impaired during the accident and that his impairment caused the accident. Mr. Rachal appeals the amount of exemplary damages as insufficient.

III.

## LAW AND DISCUSSION

### *Standard of Review*

A jury's award of damages is a finding of fact. We review the award for abuse of discretion. *Ryan v. Zurich Am. Ins. Co.*, 07-2312 (La. 7/1/08), 988 So.2d 214. The discretion vested in the trier of fact is so great that a court of appeal should rarely disturb an award of damages. In fact, "[i]t is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award." *Youn v. Maritime Overseas Corp.*, 623 So.2d 1257, 1261 (La.1993), *cert denied*, 510 U.S. 1114 (1994). We will not set aside the award absent manifest error or unless it is clearly wrong. *Ryan*, 988 So.2d 214. Further, the trial court's decision to separate the elements of the general damage award on the jury verdict form was also a finding of fact, as was the jury's decision to award punitive damages. *Id*. These factual findings are also subject to the manifest error standard of review.

***Discussion***

*Jury Verdict Form*

State Farm and Mr. Brouillette argue that the trial court erred by submitting a verdict form to the jury that separated the elements of the general damage award. Specifically, the jury verdict form contained a separate line for mental anguish, grief, and anxiety, to which the jury awarded Nicholas $1,000,000 and a separate line for loss of love and affection, to which the jury also awarded him $1,000,000. Defendants assert that these two elements are duplicative. We disagree.

Louisiana Civil Code Article 2315 mandates that "a tortfeasor must compensate a tort victim for all of the damages occasioned by his act." Compensatory damages are divided into special damages and general damages.[3] General damages include physical and mental pain and suffering, inconvenience, loss of gratification, and other losses of lifestyle that cannot be definitively measured with money. *McGee v. A C And S, Inc.*, 05-1036 (La. 7/10/06), 933 So.2d 770. These damages are "routinely dissected" on jury verdict forms. *Id.* at 774. As long as the damage elements are conceptually distinct from one another, the trial court has discretion to separate them on the verdict form. *Id.* A prior panel of this court addressed this issue and determined that loss of love and affection and mental anguish, grief, and anxiety are not conceptually different and should not be separated on the jury verdict form. *Hardy v. Augustine*, 10-946 (La.App. 3 Cir. 2/2/11), 55 So.3d 1019. That court held that grief is the expression

_____

[3]No special damages are at issue in this appeal.

of the loss of love and affection that the plaintiff experiences, not a distinct element of damage. We disagree.

Mental anguish, grief, and anxiety, on one hand, and loss of love and affection, on the other hand, are independent concepts. Mental anguish and grief refers to the "pain, discomfort, inconvenience, anguish, and emotional trauma" that accompany the injury. *McGee*, 933 So.2d at 775. In this case, it refers to the initial shock, anxiety, and distress that a ten-year old experiences as a result of the loss of a parent. Loss of love and affection, on the other hand, goes beyond the initial grief and emotional trauma. These damages compensate Nicholas for the enduring and irreversible loss of his mother. While grief and anguish will wane over time, Nicholas will always feel the absence of the traditional characteristics of the mother-son relationship. Put another way, grief is the presence of an emotion as a result of a loved one's death. Loss of love and affection, however, is the absence of an experience; specifically, the absence of a love previously bestowed.[4] These two categories are distinct and separate injuries that Nicholas experienced and will continue to experience as a result of his mother's premature and wrongful death. We affirm the trial court's decision to separate them on the jury verdict form.

The decision to separate the categories must still be evidentiary-based and is contingent upon adequate and sufficient proof that both damages are appropriate. Further, as always, the makeup of the jury verdict form is within the

---

[4] To illustrate this, consider the effect of a mother's death on two individuals: a one-year old toddler and a ten-year old adolescent. The toddler may be too young to experience the mental anguish and grief attendant such a drastic loss; he will, however, experience the absence of his mother's love and affection throughout his lifetime. The adolescent, on the other hand, will experience both emotions to a great degree. The ability to distinguish the two elements in different circumstances demonstrates their differences.

trial court's discretion. Finally, *Hardy v. Augustine* is overruled to the extent that it deviates from our opinion today.

Defendants also argue that loss of society, service, and consortium, which was a separate line on the verdict form, is duplicative of loss of love and affection and mental anguish and grief. We find no merit in this argument. The factors of a loss of consortium claim include: (1) loss of society and companionship; (2) loss of support and family income; and (3) loss of performance of material services, including educational and household help for children. *Kilpatrick v. Alliance Cas. and Reinsurance Co.*, 95-17 (La.App. 3 Cir. 7/5/95), 663 So.2d 62, *writ denied*, 95-2018 (La. 11/17/95), 664 So.2d 406. These factors are noticeably different from the elements of loss of love and affection and mental anguish and grief. Further, Louisiana courts regularly allow the jury to award a separate amount for loss of service, society, and consortium. *See, e.g. Brossett v. Howard*, 08-535 (La.App. 3 Cir. 12/10/08), 998 So.2d 916, *writ denied*, 09-77 (La. 3/6/09), 3 So.3d 492. We affirm the trial court's decision to separate these categories on the jury verdict form.

*General Damage Award Review*

Defendants assert that the award of $2,500,000 in general damages was excessive. We disagree. We will review the damage award for abuse of discretion.[5] Only if no reasonable trier of fact could award Nicholas $2,500,000 will we disturb the award. *Youn*, 623 So.2d 1257.

---

[5]Defendants contend that because the jury verdict form was duplicative, it was also misleading and, therefore, we must review the damage award de novo. We find the verdict form was not duplicative; therefore, the appropriate standard is abuse of discretion.

Nicholas enjoyed a close, loving relationship with his mother. Although his parents were separated and Nicholas lived primarily with his father, he spent most weekends with his mother. Ms. Isaac and Mr. Rachal went to great lengths to ensure their son was in the best environment for him considering his struggles with Attention Deficit Hyperactivity Disorder (ADHD).[6] This thoughtfulness and attention shows Ms. Isaac was extremely involved in her son's life. Defendants try to minimize the effects of Ms. Isaac's death on Nicholas; however, the evidence suggests that Nicholas has endured severe physical and mental trauma as a result of this tragedy. Following his mother's death, Nicholas suffered from hallucinations and suicidal thoughts and gained an extraordinary amount of weight. Nicholas's father described how Nicholas has left school on more than one occasion to visit his mother's grave and cry. The jury was apparently convinced that Ms. Isaac's death had a profound effect on Nicholas. This finding is not clearly wrong; therefore, the jury did not abuse its discretion by awarding $2,500,000 in general damages.

*Loss of Financial Support*

Defendants contend that the jury erroneously awarded Nicholas loss of financial support damages. We find no merit in this contention. The factors considered for an award of loss of financial support include the decedent's present earnings; age and life expectancy; the minor's age at the time of decedent's death; the decedent's work life expectancy; the possibility of a decrease or increase in

---

[6] Nicholas was diagnosed with ADHD before his mother's death and had frequent troubles in school before and after the accident. Defendants use these behavioral issues to question how much grief Nicholas actually experienced as a result of his mother's death. We find Nicholas's ADHD irrelevant to his entitlement to damages. This superficial linkage is a *non sequitur*. Further, Defendants' contention that Nicholas's condition somehow diminishes the love, affection, and attention his mother showed him or the grief he experiences as a result of her loss is unseemly.

earnings with age; and any other factors relevant to the premature demise of the decedent. *Nigreville v. Federated Rural Elec. Ins. Co.*, 93-1202 (La.App. 3 Cir. 7/13/94), 642 So.2d 216, *writ denied*, 94-2803 (La.1995), 649 So.2d 384. Although Ms. Isaac's income of $14,322 the year she died was not dramatically high, it steadily increased each year, suggesting she would have continued to strive to improve her financial situation had she lived. Ms. Isaac clothed Nicholas, fed him, and took care of him. Defendant argues that because Mr. Rachal did not present testimony regarding *exactly* how much money Ms. Isaac contributed to raising her son, we should presume she did not contribute anything. Common sense, however, dictates that since Ms. Isaac and Mr. Rachal maintained joint custody of Nicholas, Ms. Isaac financially contributed to her son's upbringing. Further, the jury evidently believed that Ms. Isaac would have provided for her son until she reached the limits of her work life expectancy, some thirty years in the future. Although $300,000 may be on the higher end of the scale, it was not abusively high.

*Exemplary Damages: Impairment*

Defendants assert that the jury should not have awarded exemplary damages because the evidence was insufficient to establish Mr. Brouillette was impaired such that his impairment caused the accident. We find this argument meritless. Exemplary damages may be awarded upon proof that: (1) defendant was intoxicated or had ingested a sufficient quantity of a controlled dangerous substance to make him lose control of his mental or physical faculties; (2) the intoxication was a cause-in-fact of the accident; and (3) the injuries were caused by a wanton and reckless disregard for the rights and safety of others. La.Civ.Code

8

art. 2315.4; *Brossett*, 998 So.2d 916. Mr. Brouillette's own admission and the testimony presented at trial indicate that he was impaired when the accident occurred and his impairment caused the accident. Moreover, the circumstances surrounding the accident signify that he had a wanton and reckless disregard for the safety of others.

First, Mr. Brouillette pleaded guilty to three counts of vehicular homicide in violation of La.R.S. 14:32.1. This plea required Mr. Brouillette to admit that he was under the influence of a controlled dangerous substance and that this was a cause-in-fact of the accident. Mr. Brouillette admits, therefore, that he was impaired and that his impairment caused the accident.

Second, Dr. William George, a pharmacologist and toxicologist, examined the results of a blood test Mr. Brouillette submitted to immediately after the accident. Dr. George testified that Mr. Brouillette had ingested marijuana within six to twelve hours before his blood was drawn. The doctor also found hydrocodone in Mr. Brouillette's system. He further testified that the level of marijuana and hydrocodone in Mr. Brouillette's blood was sufficient to produce the effects of decreased reaction time, sedation, inattention, blurred peripheral vision, and drowsiness. Dr. George unequivocally stated that the amount of both drugs found in his system was enough to make Mr. Brouillette lose control of his mental and physical faculties.

The facts of this case demonstrate that Mr. Brouillette was not in control of his mental or physical faculties and that he had a wanton and reckless disregard for Ms. Isaac's and her children's safety. Mr. Brouillette was traveling at ninety-one miles per hour when he hit Ms. Isaac and her two daughters and the evidence suggested he *sped up* after he hit them, instead of slowing down. Further,

9

Mr. Brouillette carried two of the victims on the hood of his car for 134 feet until finally crashing into a culvert. Before hitting the victims, Mr. Brouillette was swerving in and out of traffic and driving erratically. This accident was not the product of someone in control of his actions.[7] We find the jury properly determined Mr. Brouillette's impaired state caused the accident.

*Exemplary Damages: Amount*

Plaintiff argues that the award of exemplary damages, $100,000, was unreasonably low. We agree and increase the award to $500,000. The purpose of exemplary damages is to punish the defendant and deter future similar behavior. These damages are regarded as a fine or penalty for the protection of the public interest. *Mosing v. Domas*, 02-12 (La. 10/15/02), 830 So.2d 967. The following factors are considered in determining whether the award is too high or low: (1) the nature and extent of the harm to the plaintiff; (2) the wealth or financial situation of the defendant; (3) the character of the conduct involved; (4) the extent to which such conduct offends a sense of justice and propriety; and (5) the amount necessary to deter similar conduct in the future. *Id.* The amount of exemplary damages is the result of a fact-intensive inquiry into the case. These awards should only be disturbed if the damages are such that "all mankind at first blush would find [them] outrageous." *Id.* at 972 (quoting *Honda Motor Co., Ltd. v. Oberg*, 512 U.S. 415, 421-22 (1994)).

The circumstances of this case illustrate the need to increase the exemplary damages. Ms. Isaac is not merely injured, she is deceased; therefore,

---

[7]In fact, Officer Dean White, the highest in command of the accident investigation, testified at trial that the "unnecessary deaths . . . were caused by the reckless and inattentive driving of Justin Brouillette without regard for the safety of others."

the injury to this plaintiff is great. Defendants suggest that because Mr. Brouillette had only "a small amount" of drugs in his system, his behavior was not as reprehensible as Mr. Rachal asserts. This "small amount" of drugs was apparently enough to cause Mr. Brouillette to drive erratically at a high speed, kill three people, and not remember any of it.[8] We find this behavior sufficiently reprehensible.

Defendants also argue that Mr. Brouillette's ten years in prison is punishment enough to deter this conduct in the future. The court notes, however, that Mr. Brouillette will actually spend only five years in prison since two of his five-year sentences were ordered to run concurrently (the other five year sentence was suspended). Five years in prison for killing three people is not as punitive as Defendants contend. Mr. Brouillette was previously convicted of driving while intoxicated, and he was in another car accident prior to this one. Moreover, he showed very little remorse at trial by consistently denying that he ingested marijuana or hydrocodone, despite scientific evidence of the drugs in his system. Mr. Brouillette clearly has no regard for the safety of others while he is driving a vehicle and continually refuses to obey the law. As further evidence of Mr. Brouillette's disregard for the law, he was disciplined for possessing synthetic marijuana while in prison. Likewise, on a separate occasion a month later, he admitted to using marijuana and an opiate substance when ordered to undergo a random drug test. We cannot emphasize enough the need to deter this conduct.

Defendants suggest that we should refrain from increasing the award of exemplary damages because Mr. Brouillette will never be able to pay such a

---

[8]Mr. Brouillette claimed at trial that he did not remember the accident.

high award. The defendant's financial situation, however, is only one factor to consider and is not dispositive.[9]

We find the jury abused its discretion by awarding an unreasonably low amount of exemplary damages. Accordingly, we have determined that $500,000 is an amount sufficient to punish Mr. Brouillette's behavior and protect the public interest.

V.

### CONCLUSION

For the reasons above, we affirm the award of general damages and increase the award of exemplary damages. Costs of this appeal are assigned to Defendants, Justin Brouillette and State Farm Mutual Automobile Insurance Company.

**AFFIRMED AND AFFIRMED AS AMENDED**.

---

[9] We also note that in the context of exemplary damages the defendant's financial situation is pertinent primarily when the defendant is a large corporation, such that a small amount of damages would not deter wrongful conduct. *Mosing*, 830 So.2d 967. That is not the case here.

NUMBER 12-794

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

VICTOR RACHAL

VERSUS

JUSTIN P. BROUILLETTE, ET AL.

AMY, J, concurring in part and dissenting in part.

I respectfully dissent from the majority opinion's conclusions regarding the separate listings of general damages elements on the jury verdict sheet. In my opinion, the form erroneously duplicated conceptually similar areas of recovery.

The form at issue in this case inquired, in pertinent part, as follows:

1. What amount, if any, in compensatory damages do you award on behalf of Nicholas Issac?

   a. Past, present and future *mental anguish, grief and anxiety* due to the wrongful death and loss of his mother.

   b. Past, present and future *loss of the love and affection* of his mother

   c. *Loss of society, service and consortium* of his mother

   d. *Loss of financial support* by his mother, Jo Ann Issac

(Emphasis added.)

As addressed in the majority opinion, the supreme court, in *McGee v. A C and S, Inc.*, 05-1036 (La. 7/10/06), 933 So.2d 770, found no error in the use of a verdict sheet that listed "loss of enjoyment of life" as a separate element of general damages. It noted a conceptual difference between the element of "loss of enjoyment of life" and broad categories of general damages such as pain and suffering, both physical and mental.

However, I do not find that *McGee* necessarily permits the type of further sub-division contained on the verdict sheet under review, i.e., "mental anguish, grief, and anxiety," "loss of love and affection" and "loss of society, service and consortium."

Rather, I find this court's decision in *Hardy v. Augustine*, 10-946 (La.App. 3 Cir. 2/2/11), 55 So.3d 1019, *writ denied*, 11-0470 (La. 4/25/11), 62 So.3d 92, squarely on point with and applicable to this case. In *Hardy*, the panel considered whether the general damages element of mental pain and suffering could be further sub-divided to list one portion of that element, "grief and anguish," separately from another portion of that element, "loss of love, affection, and companionship." *Hardy* rejected that further sub-division, finding that the injury, itself, is the same for both sub-divisions. The panel determined that the former, "grief and anguish," is merely an expression of the latter, "loss of love, affection, and companionship." I adhere to that view here. Accordingly, I find that the trial court erred in permitting "mental anguish, grief and anxiety" to be listed separately from "loss of love and affection."

Further, and the more pronounced problem in my opinion, is the additional listing of "loss of society, service, and consortium." I see no sufficient distinction between love/affection and society/consortium, so as to permit a separate line entry for these sub-divisions. In *McGee*, for example, the supreme court explained that loss of consortium is a harm to relational interest, something that, in my opinion, would include loss of love and affection. Additionally, jurisprudence supports the view that a consortium claim includes, among other things, loss of love and affection, society and companionship, services, and support. *See, e.g., Willis v. Noble Drilling*, 11-598 (La.App. 5 Cir. 11/13/12), _ So.3d _ (citing *Finley v. Bass*,

2

478 So.2d 608 (La.App. 2 Cir. 1985)). *See also Lonthier v. Northwest Ins. Co.*, 497 So.2d 774 (La.App. 3 Cir. 1986) (wherein a panel of this court discussed loss of love, companionship, and affection within the context of the element of "society" within a consortium claim).

Finally, the potential confusion of the overlapping areas of recovery was exacerbated by the fact that the jury was asked to make an award, not only for "loss of society, service and consortium," but to also make a separate award for "loss of financial support." As jurisprudence discusses support as an element of consortium, I believe that these separate awards resulted in a duplicative award.

Accordingly, I find merit in the defendants' assignment regarding the nature of the verdict sheet and dissent from the majority opinion in this regard. Given the patent duplication between the jury's awards for "loss of society, service and consortium" and "loss of financial support," I would reverse the separate, $300,000 award for the latter.

To the extent that the remaining overall general damages award of $2,500,000 is not an abuse of discretion, I join in the majority's affirmation of that overall figure. *See Hardy*, 55 So.2d 1019 (wherein the panel reviewed the overall general damage award for abuse of discretion after determining that the jury verdict sheet should not have contained separate lines for "loss of love, affection and companionship" and for "grief and anguish.")

As for the remaining issues, including the amendment of the abusively low exemplary damages awarded, I join in the majority opinion.

VICTOR RACHAL

VERSUS

JUSTIN P. BROUILLETTE, ET AL.

**GENOVESE, J., concurs in part, dissents in part, and assigns the following reasons.**

I agree with the majority as to the jury verdict form to the extent that mental anguish, loss of love and affection, and loss of consortium are separate items of damage justifying a separate award for each on the jury verdict form provided there is sufficient evidence in the record proving same. I likewise agree with the majority as to the jury award for loss of financial support.

I disagree, however, with the majority's affirmation of the $2,500,000.00 general damage award. The fact-finder, whether it be a judge or jury, is not at liberty to award whatever it wants as a general damage award. There are legal bounds and limitations (even on jury awards). As an errors court, the standard of reviewing a general damage award is abuse of discretion. *Howard v. Union Carbide Corp.*, 09-2750 (La. 10/19/10), 50 So.3d 1251. If the reviewing court finds an abuse of discretion, then the award must be increased or decreased to the highest or lowest reasonable amount based on similar prior awards and the evidence produced in support of the award. *Id*.

In the instant case, the jury awarded $2,500,000.00 in general damages for the wrongful death of a parent. This is more than threefold the highest amount ever awarded in this state for the wrongful death of a parent. Though I am fully

cognizant and mindful of the heinous and horrific facts in this case, the law requires that such an award at least be somewhat in line with prior awards for the wrongful death of a parent. In my view, the jury award in this case must be reduced.

I also disagree with the majority's fivefold increase in the jury's award of punitive damages. There was no evidence in the record warranting such an increase; nor do I find that the jury abused its discretion in awarding $100,000.00 in punitive damages.

I would affirm the trial court's ruling relative to the jury verdict form in providing for separate elements of damage for mental anguish, loss of love and affection, and loss of consortium. I would also affirm the jury awards for loss of financial support and punitive damages. Finally, I would amend the jury's $2,500,000.00 general damage award by reducing it to $1,600,000.00, representing $500,000.00 for mental anguish, $800,000.00 for loss of love and affection, and $300,000.00 for loss of consortium.

VICTOR RACHAL

VERSUS

JUSTIN P. BROUILLETTE, ET AL

**CONERY, J. concurs in part, dissents in part, and assigns written reasons.**

### PROCEDURAL POSTURE

Sitting en banc, the majority voted to uphold a Jury Verdict Form that separated general damages into three parts and affirmed a record general damage award of $2,500.000.00 on behalf of a then ten-year-old boy for the wrongful death of his mother. Two members of the court dissented in part and concurred in part, finding the jury verdict form was improper, but the error did not lead to an excessive verdict. The majority and concurring opinions affirmed the jury's award for loss of support as well as the jury's decision to award punitive damages but voted to increase the punitive damage award from $100,000.00 to $500,000.00. Another member of the court concurred with the majority, finding the Jury Verdict Form proper, but dissented on the issue of general damages, finding the total jury award excessive. That judge concurred with the majority on the jury's decision to award punitive damages and agreed with the amount set by the jury.

For the reasons which follow, I respectfully dissent from the affirmation of the general damage award and the award for loss of support. I join the dissenting opinion holding that the separation of general damages on the Jury Verdict Form was error. I concur in the decision to affirm the jury's finding that punitive

damages were due, but dissent from the increase in punitive damages.

## ISSUES AND DISCUSSION

There are four assignments of error for us to review.

### *Assignment of Error Number 1- Jury Verdict Form*

I join the concurring opinion and would adopt the rationale of *Hardy v. Augustine*, 10-946 (La.App. 3 Cir. 2/2/11), 55 So.3d 1019, *writ denied*, 11-0470 (La. 4/25/11), 62 So.3d 92.

### *Assignment of Error Number 2- Excessive Verdict*

The jury awarded $2,500,000.00 in general damages.  The standard used in reviewing a general damage award is abuse of discretion.  I disagree with the majority and concurring opinions and find that the jury award is an abuse of discretion. The jury awarded damages as follows:

1.  What amount, if any, in compensatory damages do you award on behalf of Nicholas Isaac?

    a.  Past, present and future mental anguish, grief and anxiety due to the wrongful death and loss of his mother
    $1,000,000.00
    b.  Past, present and future loss of the love and affection of his mother
    $1,000,000.00
    c.  Loss of society, service and consortium of his mother
    $ 500,000.00
    d.  Loss of financial support by his mother, JoAnn Isaac
    $ 300,000.00
    e.  Funeral expenses for his mother, Jo Ann Isaac
    $ 18,819.90[1]

Finding that the jury abused its discretion, the award must be reduced to the highest amount based on similar prior awards and the evidence produced at trial. *Howard v. Union Carbide Corp.*, 09-2750 (La. 10/19/10), 50 So.3d 1251.

---

[1] The funeral expenses were stipulated to be $10,819.90, and that amount was corrected in the Final Judgment. There was no appeal from the award for funeral expenses.

The highest award ever affirmed by a Louisiana appellate court for the wrongful death of a parent brought on behalf of a minor child was $750,000.00. *Raymond v. Gov't Employees Ins. Co.*, 09-1327 (La.App. 3 Cir. 6/2/10), 40 So.3d 1179, *writ denied*, 10-1569 (La. 10/8/10), 46 So.3d 1268. The jury award in this case is three and one-third times higher. The child in this case, Nicholas, was only ten years old and was living with his father at the time of his mother's death. The child in the *Raymond* case had an intact family and had an especially close and loving relationship with his parents.

The record in this case on the issue of general damages is scant. Quite simply, the evidence does not support such a high award. I would reverse the jury's $2,500,000.00 general damage award and, using the abuse of discretion standard, would award $750,000.00, the highest award that can be affirmed as set by this court in *Raymond*. *See also Brossett v. Howard*, 08-535 (La.App. 3 Cir. 12/10/08), 998 So.2d 916, *writ denied*, 09-0077 (La. 3/6/09), 3 So.3d 492 ($500,000.00 for a nine-month-old daughter who lost her father when an intoxicated motorist drove across the highway striking his vehicle); *Estate of Frances v. City of Rayne,* 08-359 (La.App. 3 Cir. 10/03/07), 966 So.2d 1105, *writ denied*, 07-2119 (La. 2/15/08), 976 So.2d 176 ($650,000.00 to ten-year-old son whose father was killed as a result of a shooting involving a low-speed police pursuit—the father was the primary caregiver and the death of his father was devastating to the child).

### Assignment of Error Number Three- Loss of Support

The evidence at trial was almost totally lacking as to any type of support the mother provided to Nicholas. In order to be compensated for this item of damages,

this court has held there must be proof of "prior actual support." *Newsom v. State, Dept. of Trans. and Dev.*, 93-815, p. 10 (La.App. 3 Cir. 3/30/94), 640 So.2d 374, 381, *writ denied*, 641 So.2d 207 (La.1994).

The evidence showed that at the time of her death, Ms. Isaac was making about $15,000.00 per year. She had to support herself and two teenage daughters on that income. There was very little money, if any, available to send for Nicholas' support, and there was no evidence that Ms. Isaac sent any amount whatever to Victor Rachal, Nicholas' father.

There was some testimony in the record from the grandmother that Ms. Isaac "dressed her children well and took good care of them." However, that testimony falls far short of proving actual financial support. Though it is part of the parental obligation to clothe, feed, and shelter one's child, there was no evidence as to how much Ms. Isaac spent on clothing, food, and shelter for Nicholas.[2] The burden of proof is on the plaintiff to prove each element of damages by a reasonable preponderance of the evidence. At best, the evidence showed that Ms. Isaac bought some clothes and furnished some food and shelter for Nicholas on the weekends he was with her.

Based on circumstantial evidence, Ms. Isaac clothed, housed, and fed Nicholas about 100 days per year, counting most weekends and some split summers and holidays. At a generous estimated expense of $100.00 per day, she would have spent $10,000.00 per year. Loss of support through age eighteen, i.e., for ten years during the remainder of Nicholas' minority, would then total $100,000.00. I would award $100,000.00 for loss of support, being the highest award supported by the record. *See Nigreville v. Federated Rural Elec. Ins. Co.*,

---

[2] La.Civ.Code art. 227

4

93-1202, (La.App. 3 Cir. 10/11/94), 642 So.2d 216, *writ denied*, 94-2803 (La. 1/27/95), 649 So.2d 384.

*Assignment of Error Number 4- Impairment and Punitive Damages*

Defendant alleges the jury erred in finding that Justin Brouillette was impaired at the time he lost control of the vehicle he was driving, and that his impairment was a cause in fact of the death of Ms. Isaac.

I agree with the majority and concurring opinions on this issue and would affirm the jury's finding that Mr. Brouillette was clearly impaired by illegal drugs at the time he struck Ms. Isaac, and his impairment was a substantial factor in causing her death.

Plaintiff answered the appeal and claimed as an assignment of error that the $100,000.00 awarded by the jury for punitive damages was an abuse of discretion and erroneously low.

There are no Louisiana appellate cases increasing a trial court's punitive damage award. Defendant in this case was convicted of three counts of vehicular homicide, and on two of the counts he was sentenced to five years at hard labor to run concurrently. His expected parole release date, according to the record, is 2013. Because of lack of means, it is highly unlikely that Mr. Brouillette will ever be able to pay the award made by the jury. Inability to pay is a substantial factor for the jury to consider in making an award of punitive damages. *Grefer v. Alpha Technical*, 02-1237 (La.App. 4 Cir. 08/08/07), 965 So.2d 511, *writ denied*, 07-1800 (La. 11/16/07), 967 So.2d 523. The $100,000.00 awarded in this case was well within the jury's discretion.

**CONCLUSION**

For all of these reasons, I would reverse the record $2,500,000.00 Judgment

of the trial court for general damages and, using the abuse of discretion standard, award $750,000.00 in compensatory general damages, the highest award supported by the evidence and the case law. I join the dissenting opinion on the issue of duplication of damages on the Jury Verdict Form and would follow the *Hardy* rationale. I find the $300,000.00 award for loss of support to be an abuse of discretion and would award $100,000.00 for loss of support. I would maintain the $100,000.00 punitive damage award set by the jury.